# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BRYAN KRUMM, CNP

       Plaintiff,

vs.                                     No. CIV 08-1056 JB/WDS

ERIC H. HOLDER, JR.,[1] Attorney General
of the United States, MICHELE LEONHART,
Acting Administrator of the United States Drug
Enforcement Administration, GREGORY J.
FOURATT, United States Attorney for the District
of New Mexico, GARY KING, Attorney General for
the State of New Mexico,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) New Mexico Attorney General Gary K.

King's Motion to Dismiss (Corrected Filing), filed January 26, 2009 (Doc. 20); and (ii) the Federal

Defendants' Motion to Dismiss, filed February 26, 2009 (Doc. 31). The Court held hearings on

February 24, 2009 and on May 14, 2009.  The primary issues are: (i) whether the Court has

jurisdiction over Plaintiff Bryan Krumm's claims against the Defendants Eric H. Holder, Jr.,

Attorney General of the United States, Michele Leonhart, Acting Administrator of the United States

Drug Enforcement Administration, and Gregory J. Fouratt, United States Attorney for the District

of New Mexico ("Federal Defendants"); (ii) whether the Court has jurisdiction over Krumm's

claims against Gary King, Attorney General for the State of New Mexico; and (iii) whether Krumm

states a cause of action against the Federal Defendants or against King.  Because the Court finds that

---

[1] Krumm originally named Michael Mukasey, former Attorney General of the United States
in this case.  Pursuant to rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes
current Attorney General Eric H. Holder, Jr.

Congress has set forth the exclusive method for seeking the rescheduling of controlled substances, and because Krumm has not followed that method, the Court will dismiss the federal claims for lack of subject-matter jurisdiction.  Given that the Court does not have jurisdiction over the federal claims, the Court will decline to exercise jurisdiction over the claims against King, which are, by Krumm's admission, rooted in state law.

## FACTUAL BACKGROUND

Currently, under the Controlled Substances Act, 21 U.S.C. §§ 801-971 ("CSA"), it is illegal to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense," any controlled substance except as otherwise authorized under the CSA.  21 U.S.C. § 841(a).  The CSA classifies drugs into Schedules I through V.  A drug is classified as a Schedule I controlled substance when: (i) the drug or other substance has a high potential for abuse; (ii) the drug or other substance has no currently accepted medical use in treatment in the United States; and (iii) there is a lack of accepted safety for use of the drug or other substance under medical supervision.  See 21 U.S.C. § 812(b)(1)(A)-(C).  To be classified on one of the other schedules, a drug must have a "currently accepted medical use in treatment in the United States."  Id. § 812(b)(2)-(5).  The CSA lists marijuana in Schedule I.  As a consequence of marijuana's classification in Schedule I, the CSA criminalizes marijuana's use and possession.

In 2007, New Mexico passed the Lynn and Eric Compassionate Use Act, NMSA 1978 § 26-2B-1 through 26-2B-7 ("Compassionate Use Act"), which exempts qualified patients from civil or criminal penalties for possessing and using a certain amount of medical marijuana.  See NMSA 1978 § 26-2B-4 ("A qualified patient shall not be subject to arrest, prosecution or penalty in any manner for the possession of or the medical use of cannabis if the quantity of cannabis does not exceed an adequate supply.").  The Compassionate Use Act also exempts a qualified patient's primary

caregiver from arrest, prosecution, or penalty if the caregiver's patient possesses or uses medical marijuana.  See id. § 26-2B-4.

Krumm is a certified nurse practitioner and director of New Mexicans for Compassionate Use – an organization that lobbies for the medical use of marijuana.  See Complaint for Declaratory and Injunctive Relief ¶ 9, at 3, filed November 12, 2008 (Doc. 1)("Complaint").  He wishes to use marijuana "to alleviate suffering and save lives of seriously ill New Mexicans."  Id. ¶ 9, at 3. Krumm's primary care physician has also referred him to the Lynn Pierson Therapeutic Research Program, through which Krumm would be able to personally use medically prescribed marijuana. See id.  Krumm, however, fears the serious legal repercussions that would result from using marijuana in light of federal law prohibiting its use.  See id. ¶ 9, at 3-4.

## PROCEDURAL BACKGROUND

In this lawsuit, Krumm seeks to compel the federal government to change the classification of marijuana in the CSA.  Krumm alleges that "[t]he scheduling of marijuana under the [CSA] is unlawful because marijuana has 'accepted medical use in treatment in the United States[.]'" Complaint ¶ 20, at 6-7 (quoting 21 U.S.C. § 812(b)(1)).  Krumm alleges in his Complaint that "[b]ecause marijuana has 'accepted medical use in treatment' in 12 states . . . the Drug Enforcement Administration must remove marijuana from schedule I."  Complaint ¶ 51, at 20 (quoting 21 U.S.C. § 812(b)(1)).

Thus, Krumm seeks: (i) preliminary and permanent injunctions forbidding the Defendants and all in privy with them from interfering with State medical cannibis programs; (ii) a judgment declaring that the CSA's regulatory scheme does not permit marijuana to remain in Schedule I; (iii) a judgment declaring that the principle of equal protection protects states' rights to produce, possess, distribute, and use marijuana for medical purposes; (iv) an order to the Drug Enforcement Agency

("DEA") to take marijuana out of Schedule I and to place marijuana into an appropriate schedule; (v) attorney's fees and costs of litigation; and (vi) such other relief as the Court considers appropriate.  Id., Prayer for Relief, at 21.

The Federal Defendants and King have filed separate motions to dismiss.  King filed his motion on January 26, 2009.  The Court held a hearing on King's motion on February 24, 2009.  At that hearing, the analysis of the parties gave the Court concern that it might not have jurisdiction over the case against the Federal Defendants and that Krumm might not be raising a federal claim against King.  See Transcript of February 24, 2009 Hearing at 5:1-6:4 (Court)("Tr. I").[2]  Thus, the Court was concerned that it lacked jurisdiction.  The Court therefore decided to delay ruling on King's motion until the Federal Defendants filed their motion to dismiss.

The Federal Defendants maintain that the Court lacks jurisdiction because Krumm's claims are not ripe for review.  See Federal Defendants' Memorandum in Support of Their Motion to Dismiss at 1, filed February 26, 2009 (Doc. 32)("Federal Defendants' Memo.").  The Federal Defendants also argue that Krumm has failed to exhaust his administrative remedies, because the CSA contains a mechanism through which interested parties may seek rescheduling, and Krumm has not exhausted that mechanism.  See id.  Related to their jurisdictional argument on exhaustion, the Federal Defendants maintain that the Court may not hear this action in the first instance because there has been no final agency decision for the court to review.  See id.  The Federal Defendants also argue that, even if the Court chooses to exercise jurisdiction, Krumm's claims substantively fail because, pursuant to the Supremacy Clause of the United States Constitution, state laws allowing for the use of medical marijuana that are incompatible with federal law do not invalidate federal law.

_____

[2] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Rather, according to the Federal Defendants, incompatibility between federal and state law will result in invalidation of the state law.

Krumm responds that the clear statutory language of the CSA prohibits the placement of drugs with accepted medical use in the United States in Schedule I. See Plaintiff's Response in Opposition to Federal Defendants' Motion to Dismiss at 1, filed March 25, 2009 (Doc. 36)("Response"). Krumm also contends that he is not required to exhaust his administrative remedies because exhaustion would be futile. Krumm notes that on October 9, 2002, Jon Gettman filed a rescheduling petition with the DEA. The DEA accepted the petition on April 3, 2003. See Response at 3. New Mexicans for Compassionate Use, of which Krumm is the director, was a signatory to Gettman's petition. See Response at 3. Krumm states that in the nearly seven years since the Gettman petition was filed, the DEA has yet to make a final determination on it. See Response at 3. Krumm also points out to the Court that on May 12, 2008, Carl Olsen filed a rescheduling petition with the DEA, which the DEA denied on December 19, 2008. See Response at 4.

To counter the Federal Defendants' argument that the lawsuit is not ripe, Krumm contends that the impact that the CSA has on him is sufficiently direct to merit immediate judicial review. See id. at 6. Krumm states that, as long as the CSA is in place, he is "placed between Scylla and Charybdis: either Plaintiff must comply with the Defendants' position that medical use of marijuana is illegal and thus risk life and limb, or risk serious criminal and civil penalties by using a safe and effective medication." Id.

In reply, the Federal Defendants argue that no futility exception to the exhaustion requirement applies in this case because, according to the Federal Defendants, administrative remedies are only considered futile if there is doubt about whether the agency could grant effective

relief.  See Federal Defendants' Reply Memorandum in Support of Their Motion to Dismiss at 6, filed April 13, 2009 (Doc. 37)("Reply").  The Federal Defendants point out that, in this case, the DEA has the power to grant effective relief.  See id.  Moreover, the Federal Defendants contend that, because Krumm has not exhausted his administrative remedies, there has been no final agency action for the Court to review.  See id. at 6-7.  The Federal Defendants argue that the final action that Olson obtained in his petition does not apply to Krumm's petition.  See id. at 7.

In his motion to dismiss, King asks the Court, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss him as a party to the action on the grounds that the Court lacks subject-matter jurisdiction over Krumm's Complaint and because the Complaint fails to state a claim against King upon which the Court can grant relief.  Specifically, King requests that the Court dismiss him as a party to this action, dismiss all claims with prejudice and assess costs against Krumm.  King attached to his motion a proposed order.

At the February 24, 2009 hearing, Krumm appeared unrepresented by counsel.  Krumm subsequently obtained counsel, who prepared the response to the Federal Defendants' motion and appeared at the May 14, 2009 hearing.  At the May 14, 2009 hearing, the Federal Defendants argued that the strongest basis for finding that the Court lacks subject-matter jurisdiction in this case is the failure to exhaust.  See Transcript of May 14, 2009 Hearing at 4:9-24 (Ulrich)("Tr.").[3]  Regarding the Gettman petition, the United States argued Krumm did not personally file that petition – rather, Krumm is part of an organization that was one of the signatories to the petition.  See id. at 10:15-11:1 (Ulrich).  The United States therefore contended that, because Krumm did not file the petition on his own behalf, he should not be able to rely on the DEA's delay in taking action on that petition

_____

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

to argue for a futility exception to the exhaustion requirement in his case.  See id. at 11:5-12 (Ulrich).  Furthermore, the United States argued that the proper action when an agency decision has been unduly delayed would be for a proper party with standing to bring an action to compel the DEA to act.  See id. at 16:15-21 (Ulrich).

At the May 14, 2009 hearing, the Court expressed its inclination to dismiss the claims against the Federal Defendants for failure to exhaust.  See id. at 22:2-5 (Court).  Given the possibility that the Court might dismiss Krumm's claims against the Federal Defendants, the Court inquired about the nature of the claim against King and whether that claim was state-law based or federal.  All parties agreed that the claim against King was based on state law.  See id. at 24:1-12 (Thompson); id. at 18-19 (Knoblauch).

## LAW REGARDING MOTIONS TO DISMISS

The Defendants challenge Krumm's Complaint both on jurisdictional grounds and on the merits.  Because the parties have first raised jurisdictional grounds, the Court must address the jurisdictional issues first.  The parties have also addressed the merits of Krumm's claims.

### 1.     Rule 12(b)(1).

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed.R.Civ.P. 12(b)(1).  A plaintiff bears the burden of demonstrating the federal court's jurisdiction to hear his or her claims. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182, 189 (1936). See Byrd v. EPA, 174 F.3d 239, 243 (D.C. Cir. 1999); Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983).  A motion to dismiss pursuant to rule 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

2.     **Rule 12(b)(6).**

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff

could prove some set of facts in support of the pleaded claims is insufficient; the complaint must

give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual

support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth

Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct, much
> of it innocent, then the plaintiffs "have not nudged their claims across the line from
> conceivable to plausible." The allegations must be enough that, if assumed to be true,
> the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

127 S Ct. at 1974)(further citations omitted).

## LAW REGARDING RESCHEDULING UNDER THE CSA

The CSA given the Attorney General authority to apply the provisions of the Act to the

controlled substances listed in schedules that 21 U.S.C. § 812 establishes.  See 21 U.S.C. § 812 (a).

Pursuant to 21 U.S.C. § 811,

> the Attorney General may by rule –
>
> (1) add to such a schedule or transfer between such schedules any drug or other
> substance if he--
>
> > (A) finds that such drug or other substance has a potential for abuse,
> > and
> >
> > (B) makes with respect to such drug or other substance the findings
> > prescribed by subsection (b) of section 812 of this title for the
> > schedule in which such drug is to be placed; or
>
> (2) remove any drug or other substance from the schedules if he finds that the drug
> or other substance does not meet the requirements for inclusion in any schedule.

21 U.S.C. § 811(a).  The CSA also provides the process by which the Attorney General shall make

scheduling changes:

> Rules of the Attorney General under this subsection shall be made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by subchapter II of chapter 5 of Title 5. Proceedings for the issuance, amendment, or repeal of such rules may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) on the petition of any interested party.

21 U.S.C. § 811(a). The CSA provides that, in making any rescheduling determination about a drug or controlled substance, the Attorney General shall consider eight factors:

> (1) Its actual or relative potential for abuse.
>
> (2) Scientific evidence of its pharmacological effect, if known.
>
> (3) The state of current scientific knowledge regarding the drug or other substance.
>
> (4) Its history and current pattern of abuse.
>
> (5) The scope, duration, and significance of abuse.
>
> (6) What, if any, risk there is to the public health.
>
> (7) Its psychic or physiological dependence liability.
>
> (8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

21 U.S.C. § 811(c).

The Attorney General has delegated the authority for making this determination to the DEA Administrator, who has in turn delegated the authority to the Deputy administrator. See 28 C.F.R. §§ 0.100(b) & 0.104, Appendix to Subpart R, sec. 12. The CSA also provides that, before initiating proceedings to reschedule a drug, the Administrator must gather the necessary data, and request from the Secretary of Health and Human Services a scientific and medical evaluation and recommendations regarding whether the proposed rescheduling is proper. See 21 U.S.C. § 811(b). The recommendations of the Secretary are binding on the Administrator with respect to scientific and medical matters. See 21 U.S.C. § 811(b). If the Administrator determines that the evaluations

-10-

and recommendations of the Assistant Secretary and "all other relevant data" constitute substantial evidence that the drug that is the subject of the petition should be subject to lesser control or removed from the schedules, he shall initiate rulemaking proceedings to reschedule the drug or remove it from the schedules.  See 21 U.S.C. § 811(b); 21 C.F.R. § 1308.43(e).

The CSA also provides for a process by which parties aggrieved by a final decision of the Attorney General may appeal the decision.  Under the CSA:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

21 U.S.C. § 877.

## RELEVANT LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES

"The doctrine of exhaustion of administrative remedies is one among related doctrines – including abstention, finality, and ripeness – that govern the timing of federal-court decisionmaking."  McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superceded by statute on other grounds as recognized in Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997).  A court conducting an exhaustion inquiry must give "'paramount importance'" to congressional intent. McCarthy v. Madigan, 503 U.S. at 144 (quoting Patsy v. Board of Regents of Florida, 457 U.S. 496, 501 (1982)).  Where Congress provides that certain administrative remedies are exclusive, exhaustion is required.  See Patsy v. Board of Regents of Florida, 457 U.S. at 502 n.4 (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 (1938)).  Moreover, even where there is no explicit statutory exhaustion requirement, courts must draw guidance from congressional intent "in

determining whether application of the doctrine would be consistent with the statutory scheme." Patsy v. Board of Regents of Florida, 457 U.S. at 502 n.4.  Thus, in deciding whether exhaustion of federal remedies is required, "courts generally focus on the role Congress has assigned to the relevant federal agency, and tailor the exhaustion rule to fit the particular administrative scheme created by Congress."  Id. (citing McKart v. United States, 395 U.S. 185, 193-95 (1969)).

The Supreme Court has recognized at least three broad exceptions to the exhaustion requirement: (i) "First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action,"  McCarthy v. Madigan, 503 U.S. at 146-47; (ii) "Second, an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief,'" id. at 147 (quoting Gibson v. Berryhill, 411 U.S. 564, 575, n.14 (1973)); and (iii) "Third, an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it,"  McCarthy v. Madigan, 503 U.S. at 147.

## **ANALYSIS**

At the May 14, 2009 hearing, the Federal Defendants stated that the strongest ground for dismissing the federal claims against them was failure to exhaust.  See Tr. at 4:9-24 (Ulrich).  In one sense, the Federal Defendants are correct: the CSA provides a mechanism for interested parties to seek that a substance be rescheduled, and Krumm has not followed it.  The Court believes that a discussion of exhaustion principles is appropriate in this case, given that there is an administrative process, and given that Krumm has not followed through with that process.  The Court will therefore apply exhaustion principles to demonstrate why Krumm should be obligated to exhaust the administrative process.  Ultimately, however, the Court believes that, even if Krumm exhausts the administrative remedy, this Court will continue to lack subject-matter jurisdiction.  A careful reading

of the language of the CSA convinces the Court that the correct course of action in this case is to recognize that the CSA provides the exclusive mechanism for rescheduling a controlled substance and that the CSA's rescheduling scheme does not contemplate a cause of action in federal district court. Thus, even if Krumm completes the administrative process set forth in the CSA, he would not have a cause of action in this Court. Rather, he would be required to appeal the agency's unfavorable determination to the United States Court of Appeals for the District of Columbia or to the United States Court of Appeals for the Tenth Circuit. The Court will therefore dismiss Krumm's claims against the Federal Defendants for lack of subject-matter jurisdiction. Given that the Court is dismissing the claims against the Federal Defendants, the only remaining claim is state-law based. The Court will decline to exercise jurisdiction of the state claim and will dismiss it.

## I.   KRUMM HAS FAILED TO EXHAUST HIS FEDERAL ADMINISTRATIVE REMEDIES.

An analysis of the CSA's relevant provisions convinces the Court that exhaustion is required in this case. While the CSA does not contain an explicit exhaustion requirement, it sets forth a specific process, including an appeal of unfavorable decisions, for attempting to reschedule controlled substances. Given the structure of the statute and the complexity of the decision-making process that underlies a rescheduling determination, the Court does not believe Congress intended that interested parties have the ability to seek rescheduling through judicial action in the first instance. Moreover, the Court does not believe any of the exceptions to the exhaustion requirement apply. Thus, Krumm must exhaust his administrative remedies before bringing suit in federal court. Krumm has not done so.

A. **21 U.S.C. § 811 PROVIDES THE EXCLUSIVE AVENUE THROUGH WHICH AN INTERESTED PARTY MAY SEEK RESCHEDULING OF A CONTROLLED SUBSTANCE.**

Congressional intent is of "paramount importance" in determining whether exhaustion is required in a given instance. McCarthy v. Madigan, 503 U.S. at 144. In this case, the first question is therefore whether Congress intended to allow litigants such as Krumm to bring a suit in federal court to order that marijuana be removed from Schedule I. The nature of the administrative process that Congress provides for rescheduling in the CSA, viewed in the context of the overall administrative scheme for dealing with controlled substances, reveals that Congress intended the process set forth in 21 U.S.C. § 811 to be the exclusive means by which an interested party can seek rescheduling. See Patsy v. Board of Regents of Florida, 457 U.S. at 502 n.4.

In the CSA, Congress provided that

Rules of the Attorney General under this subsection shall be made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by subchapter II of chapter 5 of Title 5. Proceedings for the issuance, amendment, or repeal of such rules may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) on the petition of any interested party.

21 U.S.C. § 811(a). The CSA provides that, in making any rescheduling determination about a drug or controlled substance, the Attorney General shall consider eight factors:

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

-14-

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

21 U.S.C. § 811(c).  The list of factors that the CSA sets forth to guide the Attorney General's decision illustrate the specialized nature of any decision to reschedule a controlled substance.  The factors embody various policy issues, including the impact that re-scheduling will have on public health, see 21 U.S.C. § 811(c)(6), and requires consideration of scientific data, including pharmacology, see 21 U.S.C. § 811(c)(3).

The Supreme Court has explained:

> the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.

McCarthy v. Madigan, 503 U.S. at 145.  Drug re-scheduling decisions implicate specialized agency expertise, and it is no surprise that Congress would desire to channel challenges to the comprehensive scheduling scheme in the CSA through one specialized agency.  Courts would be in a position to greatly undermine the CSA if they could, in the first instance, make or second-guess the scheduling decisions that Congress has charged to the Attorney General, and that the Attorney General has properly delegated to the DEA.

Krumm has also argued that a decision to re-schedule marijuana is purely legal, and thus agency expertise is not required.  The Federal Defendants dispute Krumm's characterization of the determination as legal, noting that a rescheduling decision is based, at least in part, on scientific and medical examination and a recommendation from the Secretary of Health and Human Services.  See 21 U.S.C. § 811(b).  The Federal Defendants' characterization is the more accurate one.  Krumm

would have the Court compel reclassification based on state legislatures' determination that marijuana has medical use. Essentially, his argument is that state laws recognizing medical use for marijuana conclusively establish that marijuana has accepted medical use in the United States and is therefore mis-scheduled as a matter of law.

Such an analysis, however, does not fully take into account the scheme that Congress has laid out for rescheduling a controlled substance. Under the CSA, the body making the rescheduling decision must receive scientific and medical data from the Secretary of Health and Human Services. The CSA does not contemplate that state legislatures' determinations about the use of a controlled substance can be used to bypass the CSA's rescheduling process.

Although the Tenth Circuit has not had occasion to discuss the issue, several other circuit courts have declined to substitute their judgment for that of the Attorney General and to re-classify marijuana. See United States v. Burton, 894 F.2d 188, 192 (6th Cir. 1992)("[I]t has repeatedly been determined, and correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one."); United States v. Wables, 731 F.2d 440, 450 (7th Cir. 1984)("[W]e hold that the proper statutory classification of marijuana is an issue that is reserved to the judgment of Congress and to the discretion of the Attorney General."); United States v. Middleton, 690 F.2d 820, 823 (11th Cir. 1982).

In sum, a scheduling decision is not a legal determination that an Article III court is qualified to make without an administrative record to review. Rather, the scheduling decision requires consideration of complex policy implications and scientific data. What states attempt to do with their medical marijuana laws may be helpful to the DEA in making its decisions, but the states' actions do not eliminate the need for the complex inquiry that Congress has required for drug scheduling changes. Because the process set forth in the CSA is the exclusive one that Congress has

provided for rescheduling controlled substances, litigants must exhaust that process before bringing an action in federal court.

**B.      NO EXCEPTIONS TO THE EXHAUSTION REQUIREMENT APPLY TO THIS CASE.**

Krumm argues that it would be futile for him to exhaust the administrative proceeding. Specifically, he notes that an organization that he directs is a signatory to the Gettman petition, which was filed in 2002, and upon which the DEA has yet to act.  Krumm points to the Gettman petition to argue that attempts to exhaust would be futile because of the seven-year passage of time that has already occurred since the petition to which he is a party was filed.  See Plaintiff's Memorandum in Support of Opposition to Federal Defendants' Motion to Dismiss at 3, filed May 20, 2009 (Doc. 42).  In other words, he is arguing that he has attempted to exhaust his remedies and that the DEA, acting in bad faith, has failed or refused to issue a final decision.  Thus, he argues that exhaustion is futile.  The Court is sympathetic to Krumm's frustrations over the nearly eight-year delay.  Nevertheless, the Court does not believe a law suit in federal district court to reschedule marijuana is the appropriate remedy for Krumm to seek.

The Court notes that the United States contends that Krumm cannot piggy-back on the Gettman petition to show that he has tried to use the administrative process because Krumm has not brought a petition on his own behalf.  While the Court is cognizant of this problem, which the Court would characterize as a standing problem, the Court does not believe it is necessary to decide the issue at this time.  The Court can assume, without deciding, that Krumm is capable of piggy-backing onto the Gettman petition, because even if the Court assumes Krumm is a party to that petition, the proper action at this point would be to seek for the courts to compel agency action.  Rather than bring such an action, Krumm has sued to order the rescheduling of marijuana.  In short, it makes no

difference whether Krumm is considered a party to the Gettman petition, because even if he is a party, he has not exhausted his administrative remedies.

Generally, there are three broad exceptions to the exhaustion requirement: (i) "First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," McCarthy v. Madigan, 503 U.S. at 146-47; (ii) "Second, an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief,'" id. at 147 (quoting Gibson v. Berryhill, 411 U.S. 564, 575, n.14 (1973)); and (iii) "Third, an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it," McCarthy v. Madigan, 503 U.S. at 147. The Court finds that, in this case, Krumm has not shown that the administrative process is inadequate.

The Supreme Court has explained: "Where the intent of Congress is clear to require administrative determination, either to the exclusion of judicial action or in advance of it, a strong showing is required, both the inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process." Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773-74 (1947). The Supreme Court in Aircraft & Diesel Equipment Corp. v. Hirsch also warned that "Congress' commands for judicial restraint in this respect are not lightly to be disregarded." Id. There has been no strong showing in this case that the administrative process in inadequate and that he faces impending harm if forced to follow the statutorily prescribed path to rescheduling.

Krumm's strongest argument for the inadequacy of the administrative process is the delay that the Gettman petition has incurred. An almost eight-year delay might lead a court to determine, in some circumstances, that the administrative process is not adequate. The Court is reluctant,

however, to find the administrative process in this case inadequate for that reason.  First, there is no

clear explanation in the record why the delay has been so long.  There have been other instances

where rescheduling petitions – including for marijuana – have been acted upon promptly.  In a

recent case involving arguments nearly identical to the ones presented in this case, the United States

District Court for the Southern District of Iowa noted that the plaintiff in that case had received a

final agency determination on his petition to reschedule marijuana less than a year after submitting

the petition.  See Olsen v. Holder, Order at 4-6, Civ. No. 08-0370 (S.D. Iowa 2009).  Thus, it is

evident that the DEA can and is willing to act with reasonable promptness on petitions such as the

one Krumm states Gettman submitted.  Without a better showing of the reasons for the delay – i.e.,

a showing that the DEA, and not Gettman is to blame for the delay, and that the DEA does not have

legitimate reason for taking such a long time on Gettman's petition – the Court is unwilling, on

delay grounds, to find that the administrative process is inadequate.

Moreover, the Court agrees with the Federal Defendants that, if the Gettman petition has

been unduly or improperly delayed, the proper party can bring an action to compel agency action

that has been unlawfully withheld or unreasonably delayed.  See Arizona Public Service Co. v.

United States Environmental Protection Agency, 562 F.3d 1116, 1122 (10th Cir. 2009).  The

Administrative Procedure Act, for example, provides that a reviewing court may "compel agency

action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Court need not

decide, at this time, whether Krumm is the proper party to bring a suit to compel agency action on

the Gettman petition.  It is sufficient to say at this point that it makes more sense to allow the proper

party to file a suit compelling action on the delayed Gettman petition rather for Krumm to try to

persuade the Court to short-circuit the administrative process.

Besides delay, the Supreme Court in Aircraft & Diesel Equipment Corp. v. Hirsch stated that

a litigant wishing to bypass a congressionally mandated exclusive agency process must also make a strong showing of harm.  See 331 U.S. 752, 773-74.  In this case, Krumm has made numerous statements to the effect that marijuana will save lives, and that patients unable to receive marijuana face the prospect of receiving far more dangerous drugs, such as ibuprofen.  He has also argued that he personally suffers from inflammation in his knee, and that marijuana is the only substance that will ease the pain and halt the damaging inflammation that he suffers.  The Court is not, however, willing to accept at face value Krumm's assertions that marijuana will save his or anyone else's life, or that no other medication exists that will have the anti-inflammatory effect that he states marijuana will have on his knee.  Such conclusory assertions do not constitute the strong showing that the Supreme Court has required of individuals wishing to bypass processes that Congress has declared to be the exclusive method of relief.

One other argument that Krumm has presented is that the administrative process is futile because the DEA has already rejected petitions such as his and, as a consequence, has already manifested that it has no inclination to rule in his favor.  See McCarthy v. Madigan, 503 U.S. at 147 ("[A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.").  The Court is not willing to assume, however, that because others have been unsuccessful in convincing the DEA to reschedule marijuana, the DEA is biased, or that the DEA does not review the petitions in good faith.

The exception for bias or predetermination is particularly ill-suited to the administrative process at issue in this case.  The rescheduling petition is one in which an interested party asks the DEA to reconsider a comprehensive policy stance regarding how it treats a controlled substance.  Thus, the DEA's decision is not one directed at merely addressing the grievance of one harmed individual or group.  Instead, a decision in Krumm's favor will be a manifestation of an overall

policy shift.  Because the decision to reschedule marijuana is complex, and requires a determination based on overarching policy and scientific considerations that are, for the most part, beyond the normal judicial tasks of a federal district court, it makes less sense for a court to take it upon itself to make the policy choice for the DEA.  If the Court were to credit Krumm's futility argument, the effect would be to allow a court to second guess the DEA's decision not to reschedule marijuana simply because the DEA has refused to reschedule marijuana in the past.  In other words, a court would be arrogating to itself the determination that the DEA's time had come to reevaluate an important policy position.  Such action is inappropriate in this case.

The Court notes that the rescheduling procedure that the CSA lays out includes a path for an appeal of the DEA's determination.  Under the CSA:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

21 U.S.C. § 877.  Thus, the administrative process includes an additional protection for petitioners in the form of judicial review.  That judicial review does not include the federal district courts.  Rather, the statute requires appeals to be directed to "the United States Court of Appeals for the District of Columbia or for the circuit in which [Krumm's] principal place of business is located." 21 U.S.C. § 877.

A careful consideration of the CSA and the administrative procedure it provides for making drug-rescheduling determinations convinces the Court that it does not have subject-matter jurisdiction in this case.  Krumm must exhaust his administrative remedies by following the

procedures prescribed in the CSA.  Moreover, once Krumm has exhausted the administrative process, he must seek judicial review, not in this or any other federal district court, but rather in the appropriate court of appeals.  The Court sees no good reason to exempt Krumm from the CSA's procedure, either because of futility, inadequacy, or harm to Krumm.  The procedure in place is a fair one that requires intense policy and scientific data-gathering, and it allows for judicial review. Krumm must follow that process if he wishes to further seek rescheduling of marijuana.

## II.     THE COURT WILL DECLINE TO EXERCISE JURISDICTION OVER KRUMM'S STATE-LAW CLAIMS AGAINST KING.

Generally, in actions in which a federal court has original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Nevertheless, a district court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction." Bonadeo v. Lujan, 2009 WL 1324119, at *8 (D.N.M.)(Browning, J.)(citing Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)).

The Court agrees with the parties' representation at the May 14, 2009 hearing that the claim

-22-

against King is a state-law claim.  See Tr. at 24:1-12 (Thomson); id. at 18-19 (Knoblauch).  King's

attorney, Mr. David. Thomson, in discussing the claim against King, stated: "We interpret it as a

state law claim, Judge . . . .  It's basically declaratory relief regarding interpretation of a statute."

See id. at 24:10-12.  Krumm also conceded that the claim against King appeared to be one under

state law.  See id. at 24:18-19 (Knoblauch).  Thus, given that the Court has decided to dismiss the

claims against the Federal Defendants for lack of subject-matter jurisdiction, the only remaining

claim – the claim against King – is a state-law claim.  Because the Court has dismissed all of the

federal claims, the Court will decline to exercise jurisdiction over the state-law claim and will

dismiss it without prejudice.  Krumm may, if he chooses, file that claim in the proper state-court

venue.

       In conclusion, the Court determines that it does not have subject-matter jurisdiction in this

case over the claims against the Federal Defendants.  Krumm must follow the prescribed

administrative path if he wishes to attempt to persuade the DEA to reschedule marijuana.  Because

the Court lacks subject-matter jurisdiction over the claims against the Federal Defendants, the Court

dismisses those claims.  The Court will decline to take jurisdiction over the remaining state-law

claim against King.

       **IT IS ORDERED** that: (i) the Federal Defendants' Motion to Dismiss is granted; and (ii)

New Mexico Attorney General Gary K King's Motion to Dismiss (Corrected Filing) is granted.  The

Court accordingly dismisses all claims against all parties.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Charles E. Knoblauch
Attorney at Law
Albuquerque, New Mexico

    *Attorney for Plaintiff Bryan Krumm*

Tamara Ulrich
United States Department of Justice
Civil Division, Federal Programs Branch
Washington , D.C.

– and –

Gregory J. Fouratt
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for Defendants Eric H. Holder, Jr.,*
      *Michele Leonhart, and Gregory J. Fouratt*

Gary K. King
  Attorney General for the State of New Mexico
David K Thomson
Jocelyn M. Torres
  Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

    *Attorneys for Defendant Gary King*